UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAFIQ SABIR,<br>    *Plaintiff*,<br><br>v.<br><br>WARDEN DONNA K. WILLIAMS, WARDEN, TRUST FUND ADMINISTRATOR JUAN RUIZ, & NATIONAL DIRECTOR OF FEDERAL BUREAU OF PRISONS KATHLEEN HAWK SAWYER,<br>    *Defendants*. | No. 3:20-cv-0008 (VAB) |

**INITIAL REVIEW ORDER**

Rafiq Sabir ("Plaintiff"), currently incarcerated in the Federal Bureau of Prisons ("BOP") and formerly housed at the Federal Correctional Institution Danbury ("FCI Danbury") has sued FCI Danbury Warden Donna Williams, Trust Fund Administrator Juan Ruiz ("Administrator Ruiz"), and National Director of Federal Bureau of Prisons Kathleen Hawk Sawyer. Compl., ECF No. 1 (Jan. 2, 2020).

Mr. Sabir has brought his Complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 288 (1971) (*Bivens*); the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1029–1030; the Federal Torts Claims Act (or "FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680[1]; the Administrative Procedure Act (or "APA"), 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act (or "DJA"), 28 U.S.C. § 2201.

---

[1] The Court construes Mr. Sabir as bringing his claims of fraud, false advertising, and unjust enrichment under the FTCA.

1

The Court construes Mr. Sabir's Complaint as asserting claims for damages under *Bivens* based on violations of the First and the Fifth Amendments, as well as claims for equitable relief under the APA based on violation of the Fifth Amendment's implicit equal protection guarantee.

Mr. Sabir alleges he has "class action status" as he is bringing claims asserting violations occurring against Muslim inmates at FCI Danbury and other federal prisons. Compl. ¶ 54. As a *pro se* litigant, however, Mr. Sabir may not bring a class action lawsuit because non-attorneys may not represent anyone other than themselves. *See American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (litigant generally has no standing to claim violation of rights of third parties); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (*pro se* litigant has no right to represent third parties).

For the following reasons, Mr. Sabir's claim for injunctive relief under the APA will be permitted to proceed. All other claims will be dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations[2]

Mr. Sabir has been in the custody of the Federal Bureau of Prisons since 2005. Compl. ¶ 8. In July 2014, he was allegedly transferred to FCI Danbury. *Id.* ¶ 9.

In July 2019, the Bureau of Prisons allegedly transferred Mr. Sabir from FCI Danbury to FCI Loretto, *id.* ¶ 13, a transfer allegedly in retaliation for litigation he filed against FCI Danbury. *Id.* ¶ 11. At FCI Danbury, he allegedly violated Prison Rule 212 by participating or organizing a group demonstration. *Id.*

Mr. Sabir, a Sunni Muslim, allegedly purchases and uses prayer oil for religious purposes. *Id.* ¶ 12. Mr. Sabir allegedly purchased prayer oil at each federal prison where he has

---

[2] All factual allegations are drawn from the complaint. Compl. ¶¶ 8–41.

been assigned since 2005. *Id.* ¶ 13. At FCI Loretto, however, he allegedly has been unable to purchase prayer oil due to a restriction on his commissary purchases for disciplinary reasons. *Id.*

Administrator Ruiz allegedly directly supervises the commissary operation at FCI Danbury and is responsible for issuing commissary purchase order forms to inmates that enable them to select items for purchase. *Id.* ¶ 15. These commissary forms allegedly are amended to reflect changes in items available and prices. *Id.* ¶ 16.

At FCI Danbury, under Prison Program Statement 4500.11, religious articles allegedly had "no mark-up" added to the item's cost. *Id.* ¶ 14. Prayer oil allegedly is a religious item on the commissary order form and is listed in the prison inmate handbook under permissible inmate property. *Id.* ¶¶ 17–18. It allegedly also is a religious item within the list of transferable inmate property. *Id.* ¶ 19. Based on use of the term "prayer oil" in the "Program Statement" and in official documents, Mr. Sabir allegedly ordered and paid for two bottles of prayer oil at $15 each as part of a special Ramadan order in 2017 available only to Muslim inmates. *Id.* ¶ 20. After purchasing the prayer oil, Mr. Sabir allegedly learned that the price of the prayer oil had been marked up from its cost of $12 to a price of $15 per bottle. *Id.* ¶ 21.

Mr. Sabir allegedly then filed an informal resolution form, BP-8, to request a refund of the marked-up amount. *Id.* ¶ 22. Administrator Ruiz allegedly refused to refund the mark-up and claimed that the prayer oil was not a religious item. *Id.*

Mr. Sabir alleges the commissary form is a means of advertising under the direction and control of Administrator Ruiz. *Id.* ¶ 24. The description of prayer oil as a religious item allegedly is under the direction of the FCI Warden. *Id.* at ¶ 25. Both Administrator Ruiz and Warden Williams allegedly knew or should have known that they were deceiving Mr. Sabir and other Muslim inmates by describing prayer oil as a religious item and then marking up the price. *Id.* ¶

26. Mr. Sabir alleges this practice has been ongoing since 2014, when FCI Danbury became a men's correctional facility. *Id.* ¶ 27. Mr. Sabir alleges that these marking up of Muslim religious items have been occurring at federal prisons throughout the United States. *Id.* ¶ 28.

The prison commissary allegedly makes deductions from inmate accounts after scanning an inmate's fingerprint to identify the inmate making the purchase. *Id.* ¶ 31. The fingerprint scan allegedly accesses government computers and inmate financial banking records. *Id.* ¶ 32. Through the fingerprint scan, an inmate allegedly endorses the purchases and the commissary may withdraw funds from that inmate's account. *Id.* ¶ 31. Funds from outside of Connecticut allegedly were added to Mr. Sabir's account and the prayer oil sold by FCI Danbury was acquired from outside of Connecticut. *Id.* ¶ 33. Revenue from the Trust Fund is supposed to support inmate activities, but Mr. Sabir alleges that the money is diverted for staff purposes. *Id.* ¶ 41.

    **B.**    **Procedural History**

On January 2, 2020, Mr. Sabir filed his Complaint against Warden Williams, Administrator Ruiz, and National Director Ruiz. Compl.

**II.**    **STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district

court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III. DISCUSSION

The Court construes Mr. Sabir's complaint liberally to allege federal claims based on violation of his constitutional rights under the First and Fifth Amendments of the United States Constitution; FTCA claims alleging false advertising, fraud, and unjust enrichment; and CFAA claims for violations of 18 U.S.C. §§ 1029 and 1030. Although he has not specified whether he sues Defendants in their official or individual capacities, the Court construes his Complaint as suing Defendants in their official and individual capacities because of his requests for injunctive relief, declaratory relief, and monetary damages.

#### A. *Bivens* Claims

Under *Bivens*, "the federal analog to suits brought against state officials under [Section 1983,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), claims for damages against federal officials in their individual capacities for damages are permitted only where claimant's constitutional rights have been violated. *See Dunn v. U.S. Federal Bureau of Prisons*, No. 3:03-CV-1928 (JBA), 2006 WL 695805, at *4 (D. Conn. Mar. 20, 2006) ("[A] plaintiff may seek damages against defendants acting in their individual capacities where their conduct is found to violate constitutional rights." (citing *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (*Bivens* claim limited to alleged constitutional violations); *Silva v. Williams*, No. 3:18-CV-1770 (MPS), 2019 WL 859267, at *2 (D. Conn. Feb. 22, 2019) ("*Bivens* authorizes claims for damages against federal officials in their individual capacities for damages only where the conduct is found to violate the claimant's constitutional rights." (citations omitted)).

A *Bivens* remedy thus far is possible only under three constitutional provisions: the Fourth Amendment, the Fifth Amendment, and the Eighth Amendment. *See Bivens*, 403 U.S. at 389, 397 (recognizing a private right of action under the Fourth Amendment against FBI agents for an unreasonable search and seizure claim when the defendant agents handcuffed a man in his home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979), (recognizing a *Bivens* claims under the Fifth Amendment's Due Process Clause for gender discrimination when a congressman fired his female secretary); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment when prison officials failed to treat an inmate's asthma, resulting in the inmate's death).

Beyond these three specific claims, however, courts should not imply rights and remedies under *Bivens*. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017) ("If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new."). Although not exhaustive, the Supreme Court in *Ziglar* offered the following "examples that might prove instructive:"

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–1860.

If a case implicates a new *Bivens* context, a court then considers whether "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550

7

(2007)). Notwithstanding whether an alternative remedy exists, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). The "special factors" analysis revolves around the question of whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Id.* at 1858.

Mr. Sabir's First Amendment retaliation claim, Fifth Amendment due process claim, and Fifth Amendment equal protection claim all seek to apply the *Bivens* remedy in a new context. Thus, the Court must consider the alternative process for bringing the claims and any special factors counseling hesitation.

### 1. First Amendment Retaliation

In applying the *Ziglar* analysis to a claim of First Amendment retaliation, courts have noted the existing alternative remedial structures, including the Bureau of Prison administrative grievance process and the writ of *habeas corpus*. *See Widi v. Hudson*, No. 9:16-CV-1042 (FJS/DJS), 2019 WL 3491250, at *3–4 (N.D.N.Y. Aug. 1, 2019) (collecting cases); *Wilson v. Bolt*, No. 9:18-CV-416 (DNH/TWD), 2019 WL 3561742, at *3 (N.D.N.Y. Aug. 6, 2019) (dismissing First Amendment retaliation claim filed under *Bivens*), *appeal dismissed*, (2d Cir. Nov. 18, 2019); *see also Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) ("[A]n alternative remedial structure exists, including [ ] the Bureau of Prisons administrative grievance process.").

Mr. Sabir alleges having been transferred out of FCI Danbury in retaliation for his exercise of his First Amendment rights. But the Supreme Court has never recognized, under *Bivens*, a First Amendment right to be free from retaliation. *See, e.g., Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment

claims.").

And the consideration of special factors counsel against extending *Bivens* to an inmate's retaliation claim. As *Ziglar* explained, Congress's failure to include a prisoner damages remedy for prisoner abuse in the Prison Litigation Reform Act ("PLRA") counsels against extending a *Bivens* damages remedy to inmates seeking to extend *Bivens* in a new context.[3] *Ziglar*, 137 S. Ct. at 1865; s*ee also Widi*, 2019 WL 3491250 at *3–4 (noting courts "that have addressed the effect of *Ziglar* on extending *Bivens* to encompass [First Amendment] claims" have declined to do so (citing *Buenrostro*, 770 F. App'x at 808)). Additionally, "the judicial restraint exercised in cases implicating the administration of prisons" weighs against extending *Bivens* in this context. *Thomas v. Paul*, No. 16-CV-12 (SM), 2019 WL 4451349, at *5 (D.N.H. Sept. 17, 2019); *see also Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) (noting inmate's retaliation claim involves the heavily regulated context of prison, and judicial restraint exercised in cases of prison administration counsels against extending *Bivens* remedy).

As a result, the *Ziglar* analysis does not suggest affording a *Bivens* remedy for a federal inmate's First Amendment retaliation claim, in light of the available alternative remedies and special factors counseling against extension of the *Bivens* remedy. *See Ziglar*, 137 S. Ct. at 1857.

Accordingly, as *Bivens* is not available to remedy First Amendment retaliation claims,

---

[3]In *Ziglar*, the Supreme Court provided:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse cases must be brought to federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. (citation omitted). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

137 S. Ct. at 1865.

Mr. Sabir's retaliation claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 2. Fifth Amendment Due Process

Generally, claims regarding excessive commissary prices do not arise under the Constitution. *Higgins v. Aramark*, No. 19-CV-3611 (CM), 2019 WL 2173992, at *1 (S.D.N.Y. May 20, 2019); *see also Davis v. Shaw*, No. 08-CV-0364 (NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (noting any complaints regarding prison commissary prices and selection do not make out a constitutional violation because inmates do not have constitutional right to use prison commissary).

Mr. Sabir alleges a Fifth Amendment violation based on the deprivation of his funds due to the marked-up costs included in the price of the prayer oil.

Upon applying the *Ziglar* factors, however, a *Bivens* remedy should not be extended to this claim. Mr. Sabir has alternative remedies through the Bureau of Prison's administrative remedies or a lawsuit for injunctive relief under the APA in federal court. *See Davis v. O'Donnell,* No. 15-CV-3077 (LAP), 2019 WL 6790829, at *3 (S.D.N.Y. Dec. 12, 2019) (no damages under *Bivens* could be awarded for violations of plaintiff's Fifth Amendment rights (citing *Davis v. Holder*, No. 12-CV-02122 (REB/KMT), 2014 WL 1713429, at *9 (D. Colo. Apr. 23, 2014)); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (discussing alternative remedies available to inmates). In short, the same factors precluding the expansion of *Bivens* to Mr. Sabir's First Amendment claim also limit its expansion to Mr. Sabir's Fifth Amendment due process claim.

Accordingly, in light of the alternative remedies available and the special factors counseling against extending the *Bivens* remedy in this context, Mr. Sabir's due process claim

based on deprivation of funds spent on the marked-up costs added to the price of prayer oil must be dismissed under 28 U.S.C. § 1915A(b)(1).

### 3. The Fifth Amendment Equal Protection

Although the Fifth Amendment lacks an equal protection clause, the Fifth Amendment Due Process Clause provides an implicit guarantee of equal protection.[4] *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017) (Fifth Amendment equal protection is "precisely the same" as equal protection under the Fourteenth Amendment (*citing Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n.2 (1975)).

Mr. Sabir maintains that his Fifth Amendment equal protection rights were violated because he and other Muslim inmates were treated differently than other religious groups by classifying Muslim religious items as non-religious items at the commissary. While Mr. Sabir's equal protection claim concerning prison commissary classifications is contextually distinct from a gender discrimination employment claim, s*ee Davis*, 442 U.S. at 230, 2355, Mr. Sabir has alternative remedies available through the Bureau of Prison's administrative remedies process or a different lawsuit seeking injunctive relief, *Ojo v. United States*, 364 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (discussing alternative remedies available for equal protection claim and finding no implied *Bivens* remedy). Furthermore, the same special factors discussed with respect to Mr. Sabir's First and Fifth Amendment claims also counsel against expanding the *Bivens* remedy to his equal protection claims arising under the Fifth Amendment. *See id.* at 175–76 (finding no *Bivens* remedy for Fifth Amendment equal protection claim in light of alternative

---

[4] "In order to plead a Fifth Amendment claim for discrimination, a plaintiff must allege facts showing one of three things: (1) that a law or policy is discriminatory on its face; (2) that a facially neutral law or policy has been applied in an intentionally discriminatory manner; or (3) that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 819 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

remedies and special factors); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019) (dismissing equal protection and due process claims based on alternative remedies and special factors) (collecting cases).

Accordingly, this claim also will be dismissed under 28 U.S.C. § 1915A(b)(1).

### B.     Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity to tort suits for money damages for:

> [P]ersonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Claims based on the negligent or wrongful acts or omissions of federal employees must be brought under the FTCA. *See* 28 U.S.C. § 2679(b)(1) (claim against the United States under the FTCA is exclusive remedy for tort claims against federal employee); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for non-constitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA." (citations omitted)).

28 U.S.C. § 2680(h) provides an exception for intentional torts and "preserves the government's sovereign immunity for 'assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *Gonzalez v. United States*, No. 16-CV-1494 (KAM), 2018 WL 1597384, at *7 (E.D.N.Y. Mar. 31, 2018) (quoting 28 U.S.C. § 2680(h)). To determine whether the exception provided by § 2680(h) applies, a court looks "not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim." *Dorking Genetics v. United*

*States*, 76 F.3d 1261, 1265 (2d Cir. 1996) (quotation and citation omitted). This exception "applies to claims arising out of negligent, as well as intentional, misrepresentation." *Block v. Neal,* 460 U.S. 289, 295 (1983). The intentional tort exception to the FTCA excludes fraud claims from the scope of FTCA coverage. *See* 28 U.S.C. § 2680(h); *Done v. Wells Fargo, N.A.*, No. 12–CV–04296, 2013 WL 3785627, at *5 (E.D.N.Y. July 18, 2013) (noting that Congress has expressly carved out fraud claims from the FTCA's coverage); *see also Covington v. U.S. By & Through Dep't of Air Force*, 303 F. Supp. 1145, 1149 (N.D. Miss. 1969) ("All claims of fraud of any type are excluded from the operation of the Federal Tort Claims Act, and this would include both fraud in factum as well as in inducement, both actual and constructive fraud, intrinsic and extrinsic fraud, and other species of deceit or false representation.").

The Court construes Mr. Sabir's Complaint as asserting claims of fraud, false advertising, and unjust enrichment. Because Mr. Sabir's claims of false advertising and unjust enrichment arise out of Defendants' alleged fraud regarding the prayer oil mark-up, these claims are also barred by § 2680(h). *See Mohamed v. F.B.I.,* No. 14 CV 7615 (CM), 2015 WL 6437369, at *5 (S.D.N.Y. Oct. 21, 2015) (dismissing claim seeking constructive trust to prevent unjust enrichment, and claims of misappropriation, embezzlement, and conversion because they arose from plaintiff's misrepresentation claim); *In re Grabis*, No. 13-10669 (JLG), 2018 WL 1508754, at *6–9, n.22 (Bankr. S.D.N.Y. Mar. 26, 2018) (dismissing unjust enrichment claim as barred by sovereign immunity).

Accordingly, Mr. Sabir's FTCA claims alleging theories of fraud, false advertising,[5] and unjust enrichment are barred by the doctrine of sovereign immunity, and must be dismissed under 28 U.S.C. § 1915A(b)(1).

### C.      Administrative Procedure Act and Declaratory Judgment Act Claims

Mr. Sabir requests an injunction ordering Warden Williams, Administrator Ruiz, and National Director Sawyer to stop marking up the price of religious prayer oil for Muslim inmates, and to treat Muslim religious items with the same respect as religious items of other faith groups in the bureau of prisons. Compl. ¶ 64. He also seeks a declaratory judgment finding that Defendants' acts and omissions violated his rights under the United States Constitution and federal laws. *Id.* at ¶ 64.

The Court reviews Mr. Sabir's claims for injunctive and declaratory relief to determine whether they are cognizable under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201.

#### 1.      Administrative Procedures Act

The APA waives sovereign immunity for claims asserting wrongful agency action and seeking relief other than money damages. *Sabir v. Williams*, No. 3:17-CV-749 (VAB), 2017 WL 6514694, at *2 (D. Conn. Dec. 19, 2017); *see also Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 650-52 (2d Cir. 1998) (explaining that district court should have construed complaint seeking only injunctive relief as filed under the APA, not as a *Bivens* action). Section

---

[5] To the extent Mr. Sabir seeks to bring his false advertising claim under §43(a) of the Lanham Act, his claim fails because such a suit may be brought only by a commercial plaintiff who can prove that its interests have been harmed by a competitor's false advertising. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 798 (5th Cir. 2011) ("[C]onsumers do not have standing under the Lanham Act [because] the injuries consumers suffer as a result of anti-competitive behavior – being forced to pay a higher price for a good, or being duped into purchasing a lower-quality service – are not the kinds of injuries that the Lanham Act was intended to redress."); *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222 (3d Cir. 1990); *PPX Enter, Inc. v. Audiofidelity, Inc.,* 746 F.2d 120, 125 (2d Cir. 1984).

706 of the APA permits a court to reverse an agency action that is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A).

Under the APA, a court may only review an agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A court "may not even entertain the claim against the agency . . . if the plaintiff[ ] ha[s] an adequate alternative legal remedy against someone else." *N.Y.C. Emps.' Ret. Sys. v. S.E.C.*, 45 F.3d 7, 14 (2d Cir. 1995). Challenges to prison policies have been permitted to proceed under the APA. *See, e.g.*, *Sabir,* 2017 WL 6514694 at *2 (claim against federal officials for non-monetary relief seeking to rescind Program Statement and permit congregate prayer cognizable under APA); *Berkun v. Terrell*, No. 12-CV-706(JG), 2012 WL 3233897, at *3 (E.D.N.Y. Aug. 6, 2012) (plaintiff's complaint asserted claims that warden exercised discretion in manner that violated First Amendment by denying request to receive jigsaw puzzle and that regulations governing possession of personal property were arbitrary and capricious, cognizable under the APA). Where a plaintiff fails to include such a challenge in his or her complaint, however, the case was not cognizable under the APA. *See Lucas v. Fed. Bureau of Prisons*, No. 17 CV 1184(VB), 2018 WL 3038496, at *2 (S.D.N.Y. June 18, 2018) (dismissing claim based on arbitrary and capricious revocation of plaintiff's email access under the APA that could be remedied through a petition for writ of habeas corpus challenging prison conditions under 28 U.S.C. § 2241).

Mr. Sabir requests an injunction ordering Warden Williams, Administrator Ruiz, and National Director Sawyer "to stop marking up the price of religious prayer oil for Muslim inmates, and to treat Muslim religious items with the same respect as religious items of other faith groups in [the] Federal Bureau of Prisons." Compl. ¶ 64. Here, he seeks relief allegedly

15

based on the prison policy of treating a Muslim religious item, prayer oil, like a non-religious commissary item that may be marked-up above cost.

Because his claims for injunctive relief with regard to the unequal treatment of the Muslim religious prayer oil does not challenge a prison condition but rather a prison policy, the Court will permit Mr. Sabir's claims for injunctive relief based a violation of equal protection under the Fifth Amendment to proceed against Defendants in their official capacities.

### 2.     **Declaratory Judgment Act**

The Declaratory Judgment Act does not provide an independent cause of action or confer subject matter jurisdiction on the Court, but it does "provide[ ] a form of relief for a substantive violation of law." *Sabir*, 2017 WL 6514694, at *2 (quoting *Schick v. Apker*, 07-CV-5775 (SHS/DF), 2009 WL 2016933, at *6 (S.D.N.Y. Mar. 5, 2009)). Instead, this statute "authorizes a federal district court, in a case of 'actual controversy,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Gowanus Indus. Park, Inc. v. Hess Corp.*, 10-CV-5522 (JG), 2012 WL 273657, *17 (E.D.N.Y. Jan. 31, 2012) (quoting 28 U.S.C. § 2201).

Accordingly, because declaratory relief is intended to operate prospectively, *see Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (plaintiff was "not entitled to injunctive relief because he 'allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief.'" (quoting *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)), Mr. Sabir's request for a judgment declaring that Defendants violated his federal and constitutional rights in the past must be dismissed under 28 U.S.C. § 1915A(b)(1).

### D. Computer Fraud and Abuse Act ("CFAA")

"The CFAA penalizes, *inter alia*, unauthorized access to protected computers with intent to defraud or cause damage." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 241 (S.D.N.Y. 2013) (quoting *Nexans Wires S.A. v. Sark_USA, Inc.*, 166 F. App'x 559, 561–62 (2d Cir. 2006).

As an initial matter, Mr. Sabir cannot bring a claim in this civil action based 18 U.S.C. § 1029(a)(2), which does not provide for a private right of action to a civil litigant. *Dunahoo v. Hewlett-Packard Co.*, No. 11-CV-05588 (BSJ/HBP), 2012 WL 178332, at *5 (S.D.N.Y. Jan. 20, 2012) (no private right of action exists under 18 U.S.C. § 1029). By contrast, 18 U.S.C. § 1030, provides a private cause of action against a person who "'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer.'" *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.,* 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) (quoting 18 U.S.C. § 1030(a)(2)).

Specifically, subsection (g) of the CFAA, the civil remedial provision at issue, provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i).

Subclauses (I), (II), (III), (IV) or (V), of § 1030(c)(4)(A)(i) concern:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety; [and]

17

> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V).

Mr. Sabir alleges that Administrator Ruiz committed fraud in connection with access of devices in violation of 18 U.S.C. § 1029(a)(2), and in connection with accessing a computer without authorization or exceeding authorized access in violation of the CFAA, §§ 1030(a)(2)(A)-(C), 1030(a)(4), 1030(a)(6)(a).[6] Compl. ¶ 59. Subsection (c)(4)(A)(i)(I) is the only relevant subsection, and therefore, Mr. Sabir's Complaint must allege "loss aggregating at least $5,000 in value" to state a plausible CFAA claim. 18 U.S.C. § 1030(c)(4)(A)(i)(I). Mr. Sabir has not alleged facts giving rise to an inference of a $5,000 loss. Moreover, Mr. Sabir's allegations are vague and conclusory and fail "to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also* Compl. ¶ 36 (Administrator Ruiz "knowingly with intent to defraud used fingerprint scanner access to government computers containing Plaintiff's personal data and financial records and that of other Muslim inmates that purchased pray [sic] oil; then he illegally seized their funds.").

On this basis alone, Mr. Sabir's claim under the CFAA is not plausible and will be dismissed.

---

[6] He also alleges the conspiracy to commit fraud and attempt to conspire to commit fraud as violations of these statutes. His conspiracy and fraud claims fail for the same reason—he lacks factual allegations that state with particularity who committed the conspiracy or anything about the alleged conspiracy, and fails to allege a loss of at least $5,000. *See Ipreo Holdings, LLC v. Thomson Reuters Corp.*, No. 09 Cv. 8099 (BSJ), 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 201) ("The complaint must [ ] allege with some particularity the 'damage' and 'loss' (as defined in the CFAA) claimed to be involved, with, moreover, facts showing that the $5,000 threshold of Section 1030(a)(4) is satisfied." (citations omitted)).

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on the APA claim for injunctive relief based on a violation of equal protection under the Fifth Amendment against FCI Danbury Warden Donna Williams, Administrator Juan Ruiz, and National Director of Federal Bureau of Prisons Kathleen Hawk Sawyer in their official capacities for injunctive relief. All other claims in this case are **DISMISSED**.

If Mr. Sabir believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint by **July 31, 2020**.

(2) The clerk shall prepare a summons form and send an **official capacity service packet**, including the Complaint [ECF No. 1] and this Initial Review Order, to the United States Attorney for the District of Connecticut, at any one of the three offices; send **two copies** of the summons, Complaint and its exhibits by registered or certified mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530; and send **one copy** of the summons, Complaint, and supplemental exhibit by registered or certified mail to the Bureau of Prisons at 320 First Street, N.W., Washington, D.C. 20534.

(3) The clerk shall send **Mr. Sabir** a copy of this Order.

(4) Defendants shall file their response to the Complaint, either an answer or motion to dismiss, by **August 28, 2020**. If the defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **January 1, 2021**. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed by **January 22, 2021**.

(7) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)  If Mr. Sabir changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Sabir must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Sabir has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of June, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE